GEORGE A. OSBORN AND ANOTHER v. CARL H. WILL AND OTHERS.[1]

April 10, 1931.

No. 28,294.

[1]Reported in 236 N. W. 197.

*Stanley S. Gillam,* for appellants.

*Boutelle, Bowen & Flanagan,* for respondents Carl H. and Helen R. Will.

*James E. O'Brien* and *Edward S. Bade,* for respondent Clarke Nicholson.

OLSEN, J.

Appeal by plaintiffs from an order denying their motion for a new trial.

The action is one to recover damages for fraud, for false oral representations made by defendants to plaintiffs to induce them to purchase two lots and the dwelling house situated thereon in the city of Minneapolis.

Clarke Nicholson and his mother, Antoinette Nicholson (not now a party to the suit) were the fee owners of the property. They had sold it on contract to defendant Carl H. Will, and he and his wife, Helen R. Will, were occupying the premises under the contract. Plaintiffs negotiated with the Wills and Clarke Nicholson for the purchase. On or about August 9, 1924, they entered into the written contract with Carl H. Will and wife for purchase thereof at the price of $14,000. A cash payment of $2,346.38 was made; $5,300 was paid by assuming a mortgage on the premises; $4,353.62 and interest was agreed to be paid to the Nicholsons in monthly payments to pay the balance coming to them under their contract with Will; and $2,000 and interest was agreed to be paid to Mr. Will in monthly payments.

Before signing the contract of purchase plaintiffs asked defendant Carl H. Will to put in writing his representations as to the basement of the house. He thereupon made and delivered to plaintiffs a writing stating:

"I * * * further guarantee that the basement is properly water-proofed, tight and dry. If basement does leak from rains or in the spring of the year, I agree to repair it and put it in first class condition free of expense to you."

Plaintiffs moved into the house about September 1, 1924. No water came into the basement during the balance of that year. About December 1, 1924, Mr. Will presented to plaintiffs a written guaranty in the same terms, signed by Clarke Nicholson, but running to both the plaintiffs and himself. He stated that because he would be out of town so much and Nicholson was right there and handy

it would be better for all concerned to have the guaranty signed by Nicholson. Finding this guaranty practically identical with the prior one, plaintiffs received it and returned to Mr. Will the prior guaranty made by him.

■ As already noted, this action is based on the oral representations made and not upon any guaranty or agreement to repair. The evidence is sufficient to justify the jury in finding that the defendants, in order to induce plaintiffs to purchase the property, made positive oral representations to them that the basement was dry and so water-proofed that no water would enter or stand therein; that these representations were untrue; that water in substantial quantity did seep into and stand in the basement on many occasions in each of the years 1925, 1926, and 1927 and caused damage; that attempted repairs and water-proofings by Nicholson did not remedy the condition. To make out a case of fraud or deceit the only additional facts necessary for plaintiffs to prove were that they relied upon the oral representations so made, with a reasonable belief in their truth, and were induced thereby to make the contract of purchase. At the close of plaintiffs' evidence the defendants rested and moved for a directed verdict in their favor, and the court granted the motion. If there was sufficient evidence to go to the jury on the question of plaintiffs' reliance on the oral representations and their being induced thereby to make the contract, then it was error so to direct a verdict.

■ The reasons given by the court for directing the verdict are not here decisive. If at the close of the evidence the plaintiffs had not made out a prima facie case, the order directing the verdict was right whether the reasons given by the court were correct or not. On the other hand, a motion for a directed verdict presents only a question of law and admits, for the purpose of the motion, the credibility of the evidence for the adverse party and every inference which may fairly be drawn from such evidence. If the record discloses evidence, taking the most favorable view of it for the plaintiff, sufficient to sustain a verdict for him, the motion should not be granted. Thompson v. Pioneer-Press Co. 37 Minn. 285, 33 N. W. 856; Bennett v. Syndicate Ins. Co. 39 Minn. 254, 39 N. W. 488;

Burud v. G. N. Ry. Co. 62 Minn. 243, 64 N. W. 562; McKenzie v. Banks, 94 Minn. 496, 103 N. W. 497; Lesch v. G. N. Ry. Co. 97 Minn. 503, 106 N. W. 955, 7 L.R.A.(N.S.) 93; Krenz v. Lee, 104 Minn. 455, 116 N. W. 832; Woodworth Elev. Co. v. Theis, 109 Minn. 4, 122 N. W. 310.; Ellertson v. Roholt, 109 Minn. 241, 123 N. W. 811; Knudson v. G. N. Ry. Co. 114 Minn. 244, 130 N. W. 994; Arnold v. Dauchy, 115 Minn. 28, 131 N. W. 625; Jensen v. Fischer, 134 Minn. 366, 159 N. W. 827; Olsson v. Midland Ins. Co. 138 Minn. 424, 165 N. W. 474.

■ It was not necessary to prove that the representations were known by defendants to be untrue or made in bad faith. Defendants were owners and occupants of the property, and plaintiffs would have a right to rely on their representations. Bullitt v. Farrar, 42 Minn. 8, 43 N. W. 566, 6 L. R. A. 149, 18 A. S. R. 485; Miller v. Bricker, 117 Minn. 394, 136 N. W. 14; Wann v. N. W. Trust Co. 120 Minn. 493, 139 N. W. 1061; Jacobson v. C. M. & St. P. Ry. Co. 132 Minn. 181, 156 N. W. 251, L. R. A. 1916D, 144, Ann. Cas. 1918A, 355; Schlechter v. Felton, 134 Minn. 143, 158 N. W. 813, L. R. A. 1917A, 556; Shane v. Jacobson, 136 Minn. 386, 162 N. W. 472; Helvetia Copper Co. v. Hart-Parr Co. 137 Minn. 321, 163 N. W. 665; Perkins v. Orfield, 145 Minn. 68, 176 N. W. 157; Ristvedt v. Watters, 146 Minn. 146, 178 N. W. 166; Tischer v. Bardin, 155 Minn. 361, 194 N. W. 3; Saupe v. St. Paul Tr. Co. 170 Minn. 366, 212 N. W. 892.

■ It is urged that there is not sufficient evidence to justify the jury in finding that plaintiffs believed and relied upon the representations made, and in that connection it is urged that the evidence conclusively shows that plaintiffs relied wholly upon the guaranty. Both plaintiffs testified that they believed and relied upon the oral representations. The only evidence tending to the contrary is a statement brought out on cross-examination of the plaintiff Grace Osborn, that she did not think she would have gone on with the contract if defendant Will had refused to give the written guaranty; that if he had refused they would have felt suspicious and have been afraid. She did not otherwise testify to any reliance on the

guaranty, and plaintiff George Osborn did not give any such testimony. There is the additional fact that, after receiving the Clarke Nicholson guaranty in December, 1924, the plaintiffs, during 1925, 1926, and 1927, called upon him to make good under the guaranty agreement. This evidence went no further than to make it a question of fact for the jury whether plaintiffs relied upon the oral representations made. Even if the jury found that plaintiffs relied in part upon the guaranty and in part upon oral representations, recovery could be had. Meland v. Youngberg, 124 Minn. 446, 145 N. W. 167, Ann. Cas. 1915B, 775; Kraus v. Nat. Bank of Commerce, 140 Minn. 108, 167 N. W. 353; Old Colony L. Ins. Co. v. Moeglein, 165 Minn. 117, 205 N. W. 885.

■ The fact that one who has been defrauded has a remedy on the contract or on a guaranty or warranty is not any impediment or defense to an action for the fraud or deceit. Hedin v. Minneapolis M. & S. Inst. 62 Minn. 146, 64 N. W. 158, 35 L. R. A. 417, 54 A. S. R. 628; 27 C. J. 17, § 127, citing Graham v. Shay, 61 Or. 133, 121 P. 413; Ives v. Carter, 24 Conn. 392, and other cases. See also Williams v. Wilson, 101 Ill. App. 541; Antle & Bro. v. Sexton, 137 Ill. 410, 27 N. E. 691; Hitchcock v. Gothenburg W. P. & I. Co. 4 Neb. (Unoff.) 620, 95 N. W. 638.

■ Where there is a warranty or guaranty covering the same matter as the oral fraudulent representations and the defrauded party relied solely on the warranty or guaranty, there can be of course no recovery for the fraud. But these are ordinarily questions of fact for the jury. So in McNaughton v. Conkling & Co. 9 Wis. 289, it was held error for the trial court to refuse to submit to the jury the question of whether plaintiff relied solely on the guaranty; and in Holdom v. Ayer, 110 Ill. 448, a verdict based on the finding by the jury that plaintiff relied solely on a guaranty and not on the representations was sustained. See also 26 C. J. 1165, § 76½, and cases cited in note 47.

The case of Elphick v. Hoffman, 49 Conn. 331, 332, is not in conflict with the rules stated. The court there said:

"If the alleged false representations did not induce the respondent to make the purchase, then it is a case of fraud without damage."

In that case respondent sued both for fraud and breach of warranty. The court held that he could not recover on both grounds. The trial court also had found in that case that there was no fraud, and that finding disposed of the case.

It is argued that plaintiffs had made an independent investigation and relied thereon. The evidence is not sufficient to show as a matter of law that they relied upon such investigation.

■ It is claimed that plaintiffs were granted favors in the way of an extension of time of payment. Plaintiffs did in 1927 refuse to make further payments and stated they would get out of the premises. Nicholson said he would get them out of there by fall and that they need not make any further payments, except the interest; but he declined to confirm his statement in writing. Plaintiffs then paid up. There was no binding extension agreement. The case of Humphrey v. Sievers, 137 Minn. 373, 163 N. W. 737, cited by defendants, does not sustain this claim.

■ Waiver or estoppel is urged. Plaintiffs at all times after discovery of the fraud made complaints, claimed there had been misrepresentations, and stated they would seek redress. If there was any claim of waiver, exhibits D and E, showing plaintiffs' repeated claims for redress on the ground of misrepresentations, should have been received in evidence. That plaintiffs permitted Nicholson to attempt to remedy the matter did not amount to a waiver or estoppel as a matter of law. Water first seeped into the basement in June, 1925. Complaint was made, and Nicholson attempted to make it water-tight but failed. In July, 1926, plaintiffs informed Nicholson that they could not longer stay in the house, that it was too unhealthy. On Nicholson's assurance that the condition would be remedied, plaintiffs remained. Nicholson again attempted to waterproof but failed to stop the water from coming in. In July, 1927, plaintiffs wrote Nicholson that unless he would take the property off plaintiffs' hands and pay the damages suit would be brought. Plaintiffs' testimony is that none of Nicholson's attempts to remedy the condition were successful. An unsuccessful attempt to remedy the defect or comply with the guaranty should not as a matter of law prevent recovery for the fraud.

It is suggested that Nicholson incurred substantial expense in attempting to repair. The evidence does not disclose what expense was incurred.

The contract of sale entered into by plaintiffs with McDonald was evidently carefully prepared by plaintiffs' attorney to prevent any claim of fraud against the plaintiffs; and, while it recites that the basement has been properly water-proofed and is dry, this recital is coupled with the provision that in case water does nevertheless enter the basement, the plaintiffs undertake to remedy same and that notice shall be given to plaintiffs and to Nicholson. While a circumstance to be considered, these recitals are not conclusive.

Plaintiffs did not waive the fraud by continuing to make payments on the contract after discovery of the fraud. Before the fraud was discovered they had entered into possession and paid more than $3,000 of the purchase price. It is well settled in this state and generally that one who has been defrauded and has performed a substantial part of the contract before discovery of the fraud may continue performance and thereafter sue for the fraud. The remedies for fraud or deceit are clearly stated in I. L. Corse & Co. v. Minnesota Grain Co. 94 Minn. 331, 102 N. W. 728, followed in Neibuhr v. Gage, 99 Minn. 149, 108 N. W. 884, 109 N. W. 1, and Nelson v. Waylander, 174 Minn. 356, 219 N. W. 451. See 2 Dunnell, Minn. Dig. (2 ed. & Supp.) § 1815; 27 C. J. 18, § 128B. The defrauded party may rescind by his own act or bring a suit in equity to rescind, or he may elect to perform and stand on his contract and sue for damages. The case of Encyclopedia Press, Inc. v. Harris, 140 Minn. 145, 167 N. W. 363, goes only to the extent of holding that, where the plaintiff discovers the fraud while the contract is wholly executory as to him, he must disaffirm and rescind, and cannot then elect to take the property and retain it and thereafter sue for fraud. This is the established law in this state.

In Defiel v. Rosenberg, 144 Minn. 166, 174 N. W. 838, the rule was extended so as to hold that, where the part performance was but a mere trifle of the whole at the time the fraud was discovered, the rule should be the same as if there had been no part perform-

ance, and that the part performance there could be treated as severable from the remainder of the term—that being a long term lease.

The facts in our present case do not bring it within that rule, but bring it within the general rule, reaffirmed in Dawson v. Thuet Brothers, 147 Minn. 429, 180 N. W. 534; Townsend v. Jahr, 147 Minn. 30, 179 N. W. 486; Schmitt v. Ornes Esswein & Co. 149 Minn. 370, 183 N. W. 840; Shove v. Burkholder Lbr. Co. 154 Minn. 137, 191 N. W. 397.

■ Defendants Carl and Helen Will argue that as to them there was a novation by plaintiffs' accepting the guaranty made by Clarke Nicholson and having him attempt to remedy the defect. But there was no attempted novation or any change in the contract of purchase; and, as already pointed out, this action is independent of and not brought on either of the guaranties. There was no novation as to the contract of purchase or as to the cause of action here asserted.

■ The case should have gone to the jury. The questions whether plaintiffs relied upon the oral representations or solely upon the written guaranty and whether plaintiffs waived the fraud were at most questions of fact for the jury. Other jury questions may arise on a new trial.

Neelund v. Hansen, 144 Minn. 228, 175 N. W. 538, states the rule that a false representation made by one having no interest in the transaction is not sufficient to sustain an action for deceit unless the one making the representation knows it to be false. There the representation was made by the scrivener who prepared the papers and who had no personal interest in the transaction. In the present case Nicholson was one of the fee owners of the property. He participated in the negotiations for the sale; and, while he did not sign the contract, that instrument provided for the payment of a substantial part of the purchase money to him. He had a direct and substantial interest in the transaction.

The question of the measure or amount of damages may arise. City sewers were built there in 1927. Plaintiffs sold the premises in December of that year and in the contract of sale provided that the purchaser should connect a basement drain with the sewer.

Apparently the building of the sewers relieved the water pressure in the soil to some extent, and it does not appear that there has been any trouble with water in the basement since that. Defendants may be able to present evidence to bring the case within the holding in Shane v. Jacobson, 136 Minn. 386, 162 N. W. 472.

Order reversed.

HOLT, J. (dissenting).

No exception can be taken to the general principles of law stated in the majority opinion. But I think plaintiffs' evidence brings this case under the rule stated in the last two sentences of the following quotation from Elphick v. Hoffman, 49 Conn. 331, 332:

"If the alleged false representations did not induce the respondent to make the purchase, then it is a case of fraud without damage. If he refused to accept the representation unless put in the form of a guarantee, his only redress is on the contract. He is not at liberty to lay that aside and resort to fraud. But even if we may suppose that he is entitled to either remedy he is certainly not entitled to both. Electing to pursue one he waives the other."

When it came to signing the binding contract of purchase, plaintiffs inquired of defendant Will whether he would put in writing the representation that the basement was dry. On being assured that he would, plaintiffs' own lawyer drew a contract accordingly, and it took the form of a guaranty. Later this contract executed by the vendors was surrendered for another in the same language executed by Nicholson. Soon thereafter a heavy rainfall disclosed that water came into the basement through settling cracks in its walls and floor. Without any suggestion that they had been defrauded or were holding in reserve an action for deceit, plaintiffs at once demanded of Nicholson that the water be taken out and repairs made. The demand was complied with. The same course was pursued for over two years whenever during some extraordinary rain a leak let water into the basement. Plaintiffs' evidence shows that the last or one of the last repairs was very thorough and no doubt expensive. At any rate, on December 2, 1927, when plaintiffs executed a contract to sell the house and lot to one McDonald

they therein stated and represented among other matters that they had resided in the house three years and that:

"With respect to the basement of said premises, first parties [plaintiffs] state and second parties [McDonalds] know that there has been from time to time water in said basement, but first parties agree, and said agreement is an essential part of this contract, that the basement thereof is now properly water-proof, tight and dry."

Thus by plaintiffs' own evidence it conclusively appears that they pursued their remedy under the contract until Nicholson put the basement into the condition he represented it to be when plaintiffs bought. Their contract with McDonald also evidences that they still intend to pursue their remedy on the guaranty against Nicholson, if further leaks should occur, for in such contingency notice must be given by McDonald to Nicholson. It would seem impossible under the circumstances to permit a recovery for false representations after there has been such a good faith expenditure of time and money in making them come true as the guaranty provided.

It seems also that plaintiffs failed to make a case against Nicholson under the rule of Neeland v. Hansen, 144 Minn. 228, 175 N. W. 538. He was not the vendor. He merely happened to be present the second time plaintiffs examined the house with a view of buying; and, having built the house and sold it to Will, he stated to plaintiffs that the house was built right and that the basement was dry. There is no evidence that Nicholson then knew that water had ever entered it. The rule in the case last cited is that one not a party to the transaction is not liable for fraud or deceit where he honestly and to the best of his knowledge has given the information possessed by him. I think the order should be affirmed.

DIBELL and STONE, JJ.
We concur with Mr. Justice Holt.